**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHARD J. PENSKA, an individual ) | 2:04-CV-01031-ECR (LRL) |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | **<u>Order</u>** |
| ) | |
| STATE OF NEVADA; JACKIE CRAWFORD, ) | |
| individually and as Director of the) | |
| Nevada Department of Corrections; ) | |
| JAMES LARRY O'HALLORAN, ) | |
| individually and as Associate ) | |
| Warden of Operations in the ) | |
| Southern Nevada Correctional Center) | |
| of the Nevada Department of ) | |
| Corrections; SHARLET GABRIEL, ) | |
| individually and as Equal ) | |
| Employment Opportunity Officer in ) | |
| the Nevada Department of ) | |
| Corrections; GEORGE GRIGAS, ) | |
| individually and as Warden of ) | |
| Nevada's High Desert State Prison, ) | |
| and EDISON WALKER, individually ) | |
| and as Associate Warden of ) | |
| Operations at Nevada's High Desert ) | |
| State Prison, ) | |
| ) | |
|     Defendants. ) | |
| ) | |
| _____ ) | |

    This action arises from Plaintiff Richard Penska's employment with the Nevada Department of Corrections ("NDOC") from April 1985 to October 2002.  In his first amended complaint (#25), Plaintiff alleges five claims for relief: liability under 42 U.S.C. § 1983 for the denial of due process (first claim for relief); age discrimination (second claim for relief); national origin discrimination (third claim for relief); liability under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment (fourth claim for relief); and intentional infliction of emotional

distress (fifth claim for relief).  The complaint names as
defendants the State of Nevada and the following NDOC employees in
both their official and unofficial capacities: Jackie Crawford,
James Larry O'Halloran, Sharlet Gabriel, George Grigas, and Edison
Walker.

On February 12, 2007, Defendants filed their motion for
summary judgment (#36).  Plaintiff filed his response in
opposition (#41) on April 9, 2007.  Defendants replied (#43) on
April 23, 2007.

## I.  BACKGROUND

Plaintiff Richard Penska is a 46 year old male of Polish
descent.  He was employed by the Nevada Department of Corrections
("NDOC") from April 1985 until his resignation in October 2002.
Plaintiff was born on November 21, 1961 (Defs.' Ex. P) and was
almost 41 years old when he resigned.  He began his employment at
NDOC as a corrections officer trainee (Penska Depo. 7:25-8:2,
Defs.' Ex. A).  After the one year probationary period, he became
a corrections officer (Penska Depo. 8:3-11).

In 1987, Defendant was working as a corrections officer at
the Southern District Correctional Center ("SDCC").  During the
year, Defendant Penska came across a list of those inmates
diagnosed with HIV/AIDS.  At the time, Plaintiff was vice
president of the union.  It appears that he spoke with the union
president regarding his plans to take the list home and cross-
reference against a list of those inmates with which he had been
in altercations.  As Plaintiff was leaving the prison, his shift
supervisor, Defendant O'Halloran asked Plaintiff for the list, and

2

1  Plaintiff surrendered the list.  Thereafter, Plaintiff was

2  suspended for allegedly violating inmate privacy standards; on

3  appeal, he was fully exonerated and reinstated with back-pay.

4  (Penska Depo. 16:3-5.)

5      Plaintiff alleges in his complaint that he was denied a

6  promotion to lieutenant in 1994.  (1st Am. Compl. ¶19 (#25).)  In

7  his response opposing the pending motion, he alleges that he was

8  denied promotions on numerous occasions and references alleged

9  incidents in 1987, 1991, 1994, and at an unspecified time.  (Pl.'s

10  Opp. 3-4 (#41).)  In his affidavit, Plaintiff asserts that he was

11  denied a promotion to lieutenant in 1994 despite being the "best

12  qualified candidate."  (Pl.'s Aff. ¶16 (#41).)

13      Defendants concede that in August 1997, Plaintiff, then a

14  correctional sergeant, applied for a promotion to the position of

15  correctional lieutenant and was denied.  Defendants O'Halloran and

16  Gabriel were on the interview panel.  Plaintiff grieved the denial

17  of his promotion, expressing his opinion that O'Halloran prevented

18  his promotion for retaliatory reasons.  The response from Warden

19  Hatcher indicates that five equally-qualified candidates were

20  interviewed and that, while Plaintiff was qualified, only one

21  candidate could be chosen.  (Defs.' Ex. G.)

22      Defendants also concede that Plaintiff again interviewed for

23  a correctional lieutenant position and was denied in September

24  1999.  The September 30, 1999 memorandum from Warden Miles E. Long

25  indicates that, while others scored higher on the interview, Gene

26  Carr was chosen as the successful candidate based on the

27  candidates' attendance records and personnel data.  (Defs.' Ex.

28  F.)  A November 30, 1998 memorandum from Lieutenant Reilly to

3

1  Plaintiff indicates that Plaintiff has having attendance problems
2  at the time.  (Defs.' Ex. F.)

3       It is undisputed that Defendant Jackie Crawford became
4  Director of the NDOC in May 2000.  At the time, Plaintiff was 38
5  years old.  Plaintiff claims that after Defendant Crawford came
6  on, she held a meeting.  At that meeting, Plaintiff contends:

> 7       [Defendant Crawford] made statements to the effect of this
>         was a new regime.  She was bringing in new blood.  The old
> 8       blood in the Nevada Department of Corrections was not doing
>         the job it was paid to do.  The dinosaurs were going to be
> 9       removed.  New blood was going to take over and pump some
>         energy into this Department.  Things of that nature were
> 10      said.

11  (Penska Depo. 47:14-48:5.)

12       In late 2001, Plaintiff was stationed at High Desert State
13  Prison.  It appears that there were issues involving employee
14  grievances filed against Plaintiff from this time through his
15  resignation in October 2002.  Plaintiff contends that Defendants
16  Grigas, Gabriel, and Walker solicited grievances from staff.
17  (Reilly Aff. ¶¶3-4; Hixson Aff. ¶2.)  On April 9, 2002, Defendant
18  Gabriel issued an official investigation notification to
19  Plaintiff.  (Defs.' Ex. K(6).)  By a memorandum on the same day,
20  Defendant Gabriel recommended to Defendant Grigas that Plaintiff
21  be reassigned during the investigation.  (Defs.' Ex. J.)  It
22  appears that Plaintiff was reassigned to tower duty and then
23  reassigned to the administrative building.  (Defs.' Ex. J.)  On
24  April 15, Plaintiff requested and was granted administrative leave
25  with pay.  (Defs.' Ex. J.)

26       Shortly following Plaintiff's return from leave on August 12,
27  2002, additional employee grievances were filed against Plaintiff;
28  these grievances were received by Defendant Gabriel.  (Defs.' Ex.

4

1  K(7-11).)  Plaintiff was temporarily transferred to Southern

2  Desert Correctional Center.  (Defs.' Ex. M.)  On October 10, 2002,

3  Plaintiff submitted his resignation, citing harassment and

4  discrimination.  (Defs.' Ex. N.)

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  <u>Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.</u>, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, <u>Bagdadi v. Nazar</u>, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.[1]  Fed. R. Civ. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient

---

[1]In determining whether a genuine issue of material fact remains, the court need only examine the papers submitted on the motion and those papers specifically referred to in the motion papers and on file with the court.

> We hold that the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so.  The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

<u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

1   evidentiary basis for a reasonable jury to find for the nonmoving

2   party.  Fed. R. Civ. P. 50(a).  Where reasonable minds could

3   differ on the material facts at issue, however, summary judgment

4   should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439,

5   441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

6        The moving party bears the burden of informing the court of

7   the basis for its motion, together with evidence demonstrating the

8   absence of any genuine issue of material fact.  Celotex Corp. v.

9   Catrett, 477 U.S. 317, 323 (1986).  The moving party may proceed

10  either by producing affirmative evidence negating an essential

11  element of the nonmoving party's claim or by showing that the

12  nonmoving party does not have enough evidence to carry its

13  ultimate burden of persuasion at trial.  Nissan Fire & Marine Ins.

14  Co. v. Fritz Companies, 210 F.3d 1099, 1103-04 (9th Cir. 2000).

15  See also Celotex, 477 U.S. 317; Adickes v. S.H. Kress & Co., 398

16  U.S. 144 (1970).  A moving party seeking to proceed by the latter

17  route can meet its initial burden simply by "identifying those

18  portions of 'the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with the

20  affidavits, if any,' which it believes demonstrate the absence of

21  a genuine issue of material fact," Celotex 477 U.S. at 323

22  (quoting Fed. R. Civ. P. 56(c), but before presenting such a

23  motion, the moving party must have made reasonable efforts to

24  discover whether the nonmoving party has enough evidence to carry

25  its burden at trial.  Nissan Fire, 210 F.3d at 1105-06.

26       Once the moving party has met its burden, the party opposing

27  the motion may not rest upon mere allegations or denials in the

28  pleadings, but must set forth specific facts showing that there

1   exists a genuine issue for trial.  Anderson v. Liberty Lobby,
2   Inc., 477 U.S. 242, 248 (1986).  If a moving party fails to carry
3   its initial burden of production, however, the non-moving party
4   has no obligation to produce anything and the motion will be
5   denied.  Nissan Fire, 210 F.3d at 1102-03.
6        Although the parties may submit evidence in an inadmissible
7   form--namely, depositions, admissions, interrogatory answers, and
8   affidavits--only evidence which might be admissible at trial may
9   be considered by a trial court in ruling on a motion for summary
10  judgment.  Fed. R. Civ. P. 56(c); Beyene v. Coleman Sec. Servs.,
11  Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).
12       In deciding whether to grant summary judgment, a court must
13  take three necessary steps: (1) it must determine whether a fact
14  is material; (2) it must determine whether there exists a genuine
15  issue for the trier of fact, as determined by the documents
16  submitted to the court; and (3) it must consider that evidence in
17  light of the appropriate standard of proof.  Anderson, 477 U.S. at
18  248.  Summary judgement is not proper if material factual issues
19  exist for trial.  B.C. v. Plumas Unified Sch. Dist., 192 F.3d
20  1260, 1264 (9th Cir. 1999).  "As to materiality, only disputes
21  over facts that might affect the outcome of the suit under the
22  governing law will properly preclude the entry of summary
23  judgment."  Anderson, 477 U.S. at 248.  Disputes over irrelevant
24  or unnecessary facts should not be considered.  Id.  Where there
25  is a complete failure of proof on an essential element of the
26  nonmoving party's case, all other facts become immaterial, and the
27  moving party is entitled to judgment as a matter of law.  Celotex,
28  477 U.S. at 323.  Summary judgment is not a disfavored procedural

7

1  shortcut, but rather an integral part of the federal rules as a
2  whole.  Id.

3
4              **III. ELEVENTH AMENDMENT IMMUNITY**

5       The first amended complaint names as defendants the State of
6  Nevada and specific officials and employees of NDOC in both their
7  official and individual capacities.  Defendants argue that insofar
8  as Plaintiff's claims are brought against the State of Nevada and
9  state employees in their official capacities, Eleventh Amendment
10 immunity bars suit.  (Defs.' Mot. 19 (#36).)  Plaintiff does not
11 dispute or otherwise address this contention in his opposition
12 (#41) to Defendants' motion (#36).

13      In large part, Defendants' argument is well-taken.  Under the
14 Eleventh Amendment, states enjoy immunity from suit where they
15 have not consented to suit.  This immunity extends to cover not
16 only states and state agencies, but also individuals sued in their
17 official state capacities.  Leer v. Murphy, 844 F.2d 628 (9th Cir.
18 1988).

19      There are, however, certain well-established exceptions to
20 the reach of the Eleventh Amendment.  Atascadero State Hosp. V.
21 Scanlon, 473 U.S. 234, 238 (1985).  When acting pursuant to § 5 of
22 the Fourteenth Amendment, Congress can abrogate the Eleventh
23 Amendment without the consent of the states if it does so through
24 an unequivocal expression of congressional intent.  Fitzpatrick v.
25 Bitzer, 427 U.S. 445, 456 (1976); Pennhurst State School & Hosp.
26 v. Halderman, 465 U.S. 89, 99 (1984).  Congress did so in enacting
27 the 1972 amendments to Title VII of the Civil Rights Act;
28 therefore, the Eleventh Amendment does not bar Plaintiff from

1  seeking money damages from the State under Title VII.  <u>See</u>

2  <u>Fitzpatrick</u>, 427 U.S. 445.  Plaintiffs remaining claims, however,

3  are barred by the Eleventh Amendment insofar as they are brought

4  against the State of Nevada and defendants in their official state

5  capacities.  <u>See</u> <u>Kimel v. Florida Bd. Of Regents</u>, 528 U.S. 62

6  (2000) (Eleventh Amendment immunity applicable in age

7  discrimination cases under the Age Discrimination in Employment

8  Act, 29 U.S.C. § 621 et seq.); <u>Quern v. Jordan</u>, 440 U.S. 332

9  (1979) (Eleventh Amendment immunity applicable in cases under 42

10  U.S.C. § 1983 because the statute does not explicitly and by clear

11  language indicate on its face an intent to abrogate the immunity

12  of the States).

13

14                **IV. NATIONAL ORIGIN DISCRIMINATION**

15       Plaintiff's third claim alleges discrimination based on

16  national origin in violation of Title VII, 42 U.S.C. § 2000e.

17  Title VII of the Civil Rights Act of 1965 makes it "an unlawful

18  employment practice for an employer to . . . discriminate against

19  any individual with respect to his compensation, terms,

20  conditions, or privileges of employment, because of such

21  individual's . . . national origin."  42 U.S.C. § 2000e-2(a)(1).

22  This provision prohibits discriminatory adverse employment actions

23  as well as the creation of a hostile work environment.  Under

24  Title VII, employees have "the right to work in an environment

25  free from discriminatory intimidation, ridicule, and insult."

26  <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65 (1986).

27       Plaintiff's first amended complaint (#25) appears to solely

28  allege that the State of Nevada and Associate Warden of Operations

                                9

Walker[2] are liable under Title VII for the creation of a hostile
work environment on the basis of Plaintiff's national origin
(¶¶36-39).   To prevail on such a claim, a plaintiff must show:

> (1) that he was subjected to verbal or physical conduct
> because of his national origin; (2) "that the conduct was
> unwelcome"; and (3) "that the conduct was sufficiently
> severe or pervasive to alter the conditions of the
> plaintiff's employment and create an abusive work
> environment."

Kang v. U. Lim America, Inc., 296 F.3d 810, 817 (9th Cir. 2002).
The first element includes both objective and subjective
requirements; the plaintiff must show that the workplace was "one
that a reasonable person would find hostile or abusive, and one
that the victim did in fact perceive to be so." Nichols v. Azteca
Restaurant Enterprises, Inc., 256 F.3d 864, 871-72 (9th Cir. 2001)
(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787
(1998)).

    If the allegedly hostile work environment "culminates in a
tangible employment action," the employer is strictly liable for
such harassment. Burlington Industries, Inc. v. Ellerth, 524 U.S.
742, 765 (1998).   Absent a tangible employment action, the
defendant employer may assert an affirmative defense to vicarious
liability. Faragher, 524 U.S. at 807.   The affirmative defense

_____

[2]The parties do not address whether the claim is brought
against Defendant Walker in his official or individual capacity.
Because a Title VII claim cannot properly be brought against
persons in their individual capacities but may be brought against
persons in their official capacities, e.g., Ortez v. Washington
County, State of Oregon, 88 F.3d 804, 808 (9th Cir. 1996), we read
the first amended complaint (#25) as only alleging a claim against
the State of Nevada and Defendant Walker in his official capacity
as Associate Warden of Operations at Nevada's High Desert State
Prison.

1   has two elements; the employer must show by a preponderance of the

2   evidence "(a) that the employer exercised reasonable care to

3   prevent and correct promptly any . . . harassing behavior, and (b)

4   that the plaintiff employee unreasonably failed to take advantage

5   of any preventive or corrective opportunities provided by the

6   employer or to avoid harm otherwise." Id.  In a case where the

7   plaintiff alleges the hostile work environment resulted in

8   constructive discharge, the Ellerth/Faragher affirmative defense

9   is available unless an official act underlies the constructive

10  discharge. Pennsylvania State Police v. Suders, 542 U.S. 129, 148

11  (2004).  Finally, "even if a tangible employment action occurred,

12  an employer may still assert the affirmative defense if the

13  tangible employment action 'was unrelated to any harassment or

14  complaint thereof.'" Elvig v. Calvin Presbyterian Church, 375 F.3d

15  951, 959 (9th Cir. 2004) (quoting Nichols v. Azteca Rest. Enters.,

16  256 F.3d 864, 977 (9th Cir. 2001)).

17      Plaintiff's hostile work environment claim is based on verbal

18  conduct by Defendants Walker and Grigas.[3]  Evidence of this claim

19  primarily consists of Plaintiff's deposition testimony (Penska

20  Depo., Defs.' Ex. A, Defs.' Mot (#36)).  Plaintiff testified that

21

22      [3]This portion of Plaintiff's opposition (#41) also discusses
    his allegation that Defendants Walker and Gabrielle solicited
23  employees to file false charges against Plaintiff, that Defendants
    O'Halloran and Walker denied Plaintiff's promotions, that Defendant
24  Crawford made comments about replacing dinosaurs, and that he was
    ordered to tower duty.  (Pl.'s Opp. 9 (#41).)  There is no
25  allegation in either the first amended complaint (#25) nor
    Plaintiff's opposition (#41) that these alleged acts were
26  undertaken because of Plaintiff's national origin.  It appears that
    Plaintiff raises these incidents in connection with his claims of
27  due process violations, age discrimination, and First Amendment
    violations.
28

Defendant Grigas referred to him as the "Pollack Sargeant" and a "dumb Pollack," that he made ethnic jokes, and that he would comment on his work by saying, "not bad for a Pollack." (Penska Depo. 57:20-58:20.)  He also testified that Defendant Walker would refer to him as "Officer Penis" and then pretend as if he had stumbled over the pronunciation of his last name.  (Penska Depo. 59:5-12.)  Plaintiff also cites the affidavits of Nancy Reilly and Louis Hixson, which in summary fashion declare that the affiants heard Penska referred to as the "Polish Sergeant" and as a "Pollack."  (Reilly Aff. ¶7 (#44); Hixson Aff. ¶¶5-6 (#41).) Reilly and Hixson's affidavits, however, are not probative on this issue because they do not allege specific incidents or indicate who made the alleged comments.

During his deposition, Plaintiff indicated that he did not complain about Defendant Grigas' conduct and never asked him to stop.  (Penska Depo. 58:24-59:2, 60:9-12, 61:9-14.)  With regard to Defendant Walker, Plaintiff admits, however, that once he asked Defendant Walker to stop in 2001, there were no further incidents with Defendant Walker.  (Penska Depo. 60:13-61:3.)

Defendants contend that summary judgment should be granted because (1) Plaintiff has failed to present a prima facie case and (2) there is no genuine dispute of material fact as to whether the Ellerth/Faragher affirmative defense is available and shields the State of Nevada from liability.

**A.   *Prima Facie Case***

With regard to Defendant Walker's alleged slurs, Defendants contend that the verbal conduct was not undertaken because of Plaintiff's national origin, as required for the first element of

12

1  Plaintiff's claim.  In his deposition testimony, Plaintiff appears
2  to concede this point.  In relevant part, Plaintiff said, "Walker
3  . . . continuously referred to me as 'Officer Penis' instead of
4  Officer [Penska], which, of course, has nothing to do with my
5  ethnicity, but is a slur nonetheless."  (Penska Depo. 59:6-9.)  It
6  is undisputed that Defendant Grigas' alleged conduct satisfies the
7  first element of Plaintiff's claim.

8       To prevail, Plaintiff must also demonstrate that the conduct
9  complained of was sufficiently severe or pervasive.  This requires
10 demonstrating that the work environment was both objectively and
11 subjectively hostile.  An objectively hostile environment is one a
12 reasonable person in the plaintiff's position would find hostile
13 or abusive considering all the circumstances.  Faragher, 524 U.S.
14 at 787; Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75,
15 81 (1998); Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991).
16 The assessment of whether an environment is objectively hostile
17 "requires careful consideration of the social context in which the
18 particular behavior occurs and is experienced by its target."
19 Oncale, 523 U.S. at 81.  The victim must also subjectively
20 perceive the environment as hostile, and the conduct must actually
21 alter the conditions of the victim's employment.  Harris v.
22 Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993).  Whether an
23 environment is hostile or abusive depends on all the circumstances
24 including: the frequency of the discriminatory conduct; its
25 severity; whether it is physically threatening or humiliating, or
26 a mere offensive utterance; and whether it unreasonably interferes
27 with an employee's work performance. Harris, 510 U.S. at 23; Clark
28 County School Dist. v. Breeden, 532 U.S. 268, 271 (2001).  The

13

1  required showing of severity or seriousness of the harassing
2  conduct varies inversely with the pervasiveness of frequency of
3  the conduct.  Ellison, 924 U.S. at 878.  Simple teasing, offhand
4  comments, and isolated incidents do not qualify as changes in the
5  terms and conditions of employment unless they are extremely
6  serious.  Faragher, 524 U.S. at 788.

7      As regards the liability of Defendant Walker in his official
8  capacity as Associate Warden of Operations, Plaintiff has failed
9  to show the required elements of a hostile work environment claim.
10  Even if the Court assumes that Plaintiff was subjected to
11  Defendant Walker's verbal conduct because of his national origin,
12  it does not appear that his use of the alleged phrase was
13  sufficiently severe and pervasive to alter the conditions of
14  Plaintiff's employment.  Plaintiff has cited no evidence as to the
15  frequency of the alleged conduct, and the record indicates that
16  Defendant Walker ceased the conduct upon Plaintiff's request.
17  None of the evidence indicates that Defendant Walker's conduct
18  altered the conditions of Plaintiff's employment.

19      Defendant State of Nevada also contends that it is entitled
20  to summary judgment because Plaintiff has failed to show that the
21  conduct related to his national origin was sufficiently severe and
22  pervasive.  Defendants contend that Plaintiff cannot show that the
23  environment was subjectively hostile where he failed to complain
24  of Defendant Grigas' conduct.  Plaintiff has introduced no
25  evidence indicating that he found Defendant Grigas' conduct
26  subjectively hostile.  It does appear that he found Defendant
27  Walker's conduct offensive where he complained of the conduct.
28  But, because Defendant Walker's conduct ceased upon Plaintiff's

1  request and Plaintiff has not presented any evidence indicating he

2  found Defendant Grigas' conduct offensive, it does not appear that

3  Plaintiff can show the conduct complained of was sufficiently

4  severe and pervasive to alter the conditions of Plaintiff's

5  employment.

6  **B.   _Ellerth_/_Faragher_ Affirmative Defense**

7      Defendant State of Nevada also contends that it is not liable

8  because the _Ellerth_/_Faragher_ affirmative defense is available and

9  there is no genuine dispute of material fact that Defendant

10 exercised reasonable care to prevent and correct harassing

11 behavior and Plaintiff failed to avail himself of the preventative

12 or corrective opportunities afforded by Defendant.  In his

13 opposition, Plaintiff does not address the applicability of the

14 _Ellerth_/_Faragher_ affirmative defense, and he does not argue that

15 there is a genuine issue of material fact as to either element of

16 the affirmative defense.  It appears that the affirmative defense

17 is applicable and provides a sufficient alternative and

18 independent basis for the grant of summary judgment for Defendant

19 State of Nevada on this claim.

20     The _Ellerth_/_Faragher_ affirmative defense is only available to

21 a defendant employer where there was no tangible employment

22 action.  If there was a tangible employment action, then the

23 defendant employer is vicariously liable for the hostile work

24 environment and the affirmative defense is not available.

25 _Ellerth_, 524 U.S. at 765. "A tangible employment action

26 constitutes a significant change in employment status, such as

27 hiring, firing, failing to promote, reassignment with

28 significantly different responsibilities, or a decision causing a

15

1   significant change in benefits." Id. at 761.  In the Ninth

2   Circuit, a tangible employment action does not bar a defendant

3   from invoking the Ellerth/Faragher affirmative defense if the

4   tangible employment action "was unrelated to any harassment or

5   complaint thereof." Elvig, 375 F.3d at 959 (quoting Nichols v.

6   Azteca Rest. Enters., 256 F.3d at 977).

7        Here, there are three tangible employment actions alleged by

8   Plaintiff; however, neither action is alleged to be related to the

9   alleged national origin harassment.  Plaintiff claims that he was

10  transferred, was reassigned to tower duty and administrative

11  duties, and was denied deserved promotions.  Plaintiff does not

12  argue that these were tangible employment actions or that they

13  relate to his harassment claim.

14       For the transfers and/or reassignments to be tangible

15  employment actions, they must significantly change the plaintiff's

16  responsibilities or benefits.  Ellerth, 524 U.S. at 761.

17  Plaintiff was transferred from the Southern Nevada Correctional

18  Center to the Southern Desert Correctional Center in February 1992

19  and was then transferred in March of that year to the Southern

20  Nevada Restitution Center.  (Defs.' Ex. O, Defs.' Mot. (#36).)

21  Defendant contends that these transfers are not tangible

22  employment actions because they did not significantly change

23  Plaintiff's responsibilities or benefits.  (Defs.' Mot. 12-13

24  (#36).)  The record does not indicate a change in responsibilities

25  or benefits, and Plaintiff does not discuss this issue or cite any

26  evidence indicating that the transfers were tangible employment

27  actions.

28

1    Defendants also contend that the reassignment to tower duty
2  did not significantly change responsibilities or benefits.  While
3  Plaintiff does not address this issue in his response (#41), his
4  affidavit indicates that tower duty is generally assigned to those
5  at the lower ranks of correctional officer or correctional officer
6  trainee (Penska Aff. ¶20, Pl.'s Opp. (#41)).  Furthermore, it
7  appears that the administrative assignment involved no supervisory
8  responsibilities.  Taking the evidence in the light most favorable
9  to Plaintiff, the reassignments changed his responsibilities.
10 Defendants also assert, however, that the reassignments were
11 unrelated to any harassment and were designed to protect him
12 during the investigation of illegal employment discrimination
13 claims against Plaintiff.  (Defs.' Mot. 13 (#36).)  The record
14 indicates that on April 9, 2002, Defendant Gabriel informed
15 Defendant Grigas that three complaints had been filed against Mr.
16 Penska and that there had been allegations of intimidation and
17 retaliation; Defendant Gabriel recommended that Mr. Penska not
18 have contact with subordinate staff and that he be reassigned to
19 protect the alleged victims and Mr. Penska.  (Defs.' Ex. J, Defs.'
20 Mot. (#36).)  After Mr. Penska was reassigned, he was informed
21 that the reassignment was for his protection during the pendency
22 of the complaints against him and was not a disciplinary action.
23 (Defs.' Ex. K(6), Defs.' Mot. (#36).)  It therefore appears that
24 the reassignment was unrelated to the alleged harassment on the
25 basis of Plaintiff's national origin.  Plaintiff has introduced no
26 evidence or arguments indicating otherwise.
27    As regards the denied promotions, a denied promotion is a
28 tangible employment action.  But, it is unclear when Plaintiff

17

1  alleges he was denied promotions and how the denied promotions
2  relate to his hostile work environment claim.  Plaintiff's
3  statement of facts appear to reference four denied promotions.
4  (Pl.'s Opp. 3-4 (#41).)  There are no references to the evidence
5  in Plaintiff's factual discussion of the promotional opportunities
6  he was allegedly denied.  In his affidavit, Plaintiff asserts that
7  he was the best qualified candidate for promotion to lieutenant in
8  1995, but was passed over on four occasions.  (Penska Aff. ¶16
9  (#41).)  He appears to allege, however, that the failure to
10 promote was connected to the HIV/AIDS list incident in 1987; he
11 claims that Walker was on the panel and "had a history of enmity
12 directed at [Mr. Penska] following the HIV list incident."
13 (Penska Aff. ¶16 (#41).)  Plaintiff has not identified and the
14 Court has not found any evidence indicating that the promotions
15 Plaintiff was allegedly denied are at all related to his claim of
16 a hostile work environment on the basis of national origin.

17      Therefore, it appears the tangible employment actions alleged
18 by Plaintiff are unrelated to the first claim for relief, and the
19 Ellerth/Faragher affirmative defense is available to Defendant
20 State of Nevada.  The State of Nevada can escape vicarious
21 liability on Plaintiff's hostile work environment claim if it
22 shows by a preponderance of the evidence "(a) that the employer
23 exercised reasonable care to prevent and correct promptly any
24 . . . harassing behavior, and (b) that the plaintiff employee
25 unreasonably failed to take advantage of any preventive or
26 corrective opportunities provided by the employer or to avoid harm
27 otherwise."  Faragher, 524 U.S. at 807.  Defendants cite
28 Administrative Regulation 112, which prohibits discrimination on

1   the basis of national origin and provides that corrective action

2   will be taken to enforce the policy.  (Defs.' Ex. R, Defs.' Mot.

3   (#36).)  Plaintiff also contends that the second element of the

4   affirmative defense is met where Plaintiff failed to file a

5   grievance against Defendant Grigas and where Defendant Walker

6   ceased the offensive verbal conduct upon Plaintiff's request.

7   (Defs.' Mot. 12 (#36).)  Plaintiff does not address Defendants'

8   assertion of the affirmative defense in his response (#41).  It

9   appears that Defendant State of Nevada has met its burden to prove

10  the elements of the Ellerth/Faragher affirmative defense.  Because

11  Plaintiff fails to demonstrate a genuine issue of material fact or

12  otherwise address this argument, summary judgment will be granted

13  on this claim for Defendant State of Nevada.

14

15                   **V. AGE DISCRIMINATION**

16      The Age Discrimination in Employment Act of 1967, 29 U.S.C.

17  § 621 et seq., ("ADEA")  makes it unlawful for an employer "to

18  fail or refuse to hire or to discharge any individual or otherwise

19  discriminate against any individual with respect to his

20  compensation, terms, conditions, or privileges of employment,

21  because of such individual's age."  29 U.S.C. § 623 (2006).  The

22  ADEA prohibitions apply only to discrimination against

23  "individuals who are at least 40 years of age."  29 U.S.C. §

24  626(a) (2006).

25      A plaintiff claiming age or sex discrimination may establish

26  his claim by direct evidence of a discriminatory motive or by the

27  indirect, burden-shifting method set forth in McDonnell Douglas

28  Corp. v. Green, 411 U.S. 792 (1973).  Direct evidence of

                              19

discriminatory intent is "evidence which, if believed, proves the

fact [of discriminatory animus] without inference or presumption."

Vazquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir.

2003) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217 (9th

Cir. 1998)) (alterations in original).

Plaintiff's claim of age discrimination is based on comments

that Ms. Crawford allegedly made at a meeting.  In his deposition,

he recounts those comments as follows:

> [Defendant Crawford] made statements to the effect of this
> was a new regime.  She was bringing in new blood.  The old
> blood in the Nevada Department of Corrections was not doing
> the job it was paid to do.  The dinosaurs were going to be
> removed.  New blood was going to take over and pump some
> energy into this Department.  Things of that nature were
> said.

(Penska Depo. 47:14-48:5.)  Plaintiff alleges that these

statements are evidence of discriminatory intent.  "Remarks can

constitute evidence of discrimination."  Pottenger v. Potlach

Corp., 239 F.3d 740, 747 (9th Cir. 2003).  The remarks alleged by

Plaintiff, however, do not create a genuine issue of material fact

as to the presence of discriminatory intent.

In Pottenger, the Ninth Circuit found that comments referring

to an "old management team," an "old business model," and

"deadwood" did not create a triable issue of fact sufficient to

defeat summary judgment.  329 F.3d at 747.  In so holding, the

court noted:

> We have found that a supervisor's comment about getting rid
> of "old timers" because they would not "kiss [his] ass" did
> not sufficiently support an inference of age
> discrimination, Nidds v. Schindler Elevator Corp., 113 F.3d
> 912, 918-19 (9th Cir. 1996), that a comment that "we don't
> necessarily like grey hair" constituted "at best weak
> circumstantial evidence" of discriminatory animus, Nesbit
> v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993), that
> the use of the phrase "old-boy network" is generally

considered a colloquialism unrelated to age, <u>Rose v. Wells Fargo & Co.</u>, 902 F.2d 1417, 1423 (9th Cir. 1990), and that an employer's comment describing a younger employee promoted over an older employee as a "bright, intelligent, knowledgeable young man" did not create an inference of age discrimination, <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438-39 (9th Cir. 1990).

<u>Id.</u>  In the case at bar, Defendant Crawford's statements regarding a "new regime," "new blood," and "dinosaurs" do not denote an intent to discriminate based on age.  Rather, the comments reflect an incoming director's desire to effectuate change in the department and to make her control over the department and its policies clear.  Summary judgment will therefore be granted for Defendants on this claim.

## VI. FIRST AMENDMENT

Plaintiff's fourth claim alleges liability under 42 U.S.C. § 1983 for alleged violations of Plaintiff's First Amendment rights.  "In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial or motivating factor for the adverse employment action."  <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 973 (9th Cir. 2003) (internal quotations omitted).  If the plaintiff meets his burden, the defendants can nonetheless escape liability if they demonstrate either that: (a) under the balancing test established by <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568 (1968), legitimate governmental interests outweigh the employee's interest in exercising his First Amendment rights; or (b) under the mixed motives analysis established by <u>Mount Healthy City School District</u>

1  <u>Board of Education v. Doyle</u>, 429 U.S. 274, 287 (1977), they would
2  have taken the same actions in the absence of the plaintiff's
3  expressive conduct.  <u>Alpha Energy Savers, Inc. v. Hansen</u>, 381 F.3d
4  917, 923 (9th Cir. 2004).

5      Defendants, in moving for summary judgment on this claim,
6  contend that Plaintiff cannot establish that there was an adverse
7  employment action and that Plaintiff's speech was a substantial or
8  motivating factor for any adverse employment action.[4]  (Defs.' Mot.
9  14-15 (#36).)  In opposing the motion for summary judgment,
10 Plaintiff argues that he engaged in protected speech and that
11 Defendants have failed to show that the <u>Pickering</u> balancing test
12 insulates their actions.  (Pl.'s Opp. 12-14 (#41).)  Plaintiff
13 does not expressly argue that he has satisfied the second and
14 third elements by presenting evidence of an adverse employment
15 action and by showing that the protected speech was a substantial
16 or motivating factor for Defendants' actions.  (<u>See</u> Pl.'s Opp. 12-
17 14 (#41).)

18 ***A.   Protected Speech***

19     In his first amended complaint (#25), Plaintiff contends that
20 he engaged in protected speech "when he voiced his concern
21 regarding the risk of exposure to fellow inmates to the Human
22 Immunodeficiency Virus or AIDS" (¶40).  Defendants do not
23 challenge that Plaintiff engaged in protected speech relating to
24 the HIV/AIDS incident.  (Defs.' Reply 6 (#43).)  In opposing

25

26     [4]In their reply, Defendants also contend that Plaintiff's
   claim is barred by the doctrine of laches.  (Defs.' Reply 6 (#43).)
27 We will not address this contention because it was not raised in
   Defendants' motion (#36) and Plaintiff has not had an opportunity
28 to respond to this argument.

Defendants' motion for summary judgment, Plaintiff contends that
he also engaged in protected speech concerning union activities
and that his "participation in union activities . . . made him a
target of retaliation." (Pl.'s Opp. 12 (#41).) Plaintiff makes
no references to the record in connection with this assertion. It
is unclear what alleged union activities Plaintiff is referencing.
In his statement of facts, he only references his union activities
when asserting that his actions in connection with the HIV/AIDS
incident were undertaken partially in his capacity as vice-
president of the union. (Pl.'s Opp. 2 (#41).) Therefore, it
appears that the only expressive conduct that Plaintiff alleges
was protected is his conduct in connection with the HIV/AIDS
incident. As Defendants have conceded that this conduct was
protected, we need not explore this element further.

**B.   *Adverse Employment Action***

Defendants dispute whether Plaintiff can show an actionable
adverse employment action. In his first amended complaint (#25),
Plaintiff alleges that Defendants "willfully and unlawfully
created for Penska a hostile work place for the purposes of
retribution, forcing his resignation, and eliminating him from
employment" (¶40). Plaintiff's response (#41) does not address
this issue.

Adverse employment actions encompass a wide range of
activities under Ninth Circuit precedent.

> The precise nature of the retaliation is not critical to
> the inquiry in First Amendment retaliation cases. The goal
> is to prevent, or redress, actions by a government employer
> that "chill the exercise of protected" First Amendment
> rights.   Various kinds of employment actions may have an
> impermissible  chilling  effect.     Depending  on  the

circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights.

Coszalter, 320 F.3d at 974-75 (internal citation omitted).

Defendants allege that Plaintiff has failed to produce anything more than his allegations in support of his assertion that Defendants' alleged actions constituted adverse employment actions. (Defs.' Mot. 14 (#36).)  Despite Plaintiff's failure to address this issue, it appears from the record and briefings on file that there is a genuine issue of material fact with regard to whether Defendants undertook an adverse employment action where, for example, Plaintiff alleges he was denied promotions.

## C. *Substantial or Motivating Factor*

Lastly, Defendants contend that Plaintiff cannot show the third element of a First Amendment violation because there is no evidence that Plaintiff's speech was a substantial or motivating factor for the alleged adverse employment actions.  Again, Plaintiff's response fails to address this issue.

The Ninth Circuit has established three methods by which a plaintiff can show that retaliation was a substantial or motivating factor:

> First, a plaintiff can introduce evidence regarding the proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury logically could infer [that the plaintiff] was terminated in retaliation for his speech.  Second, a plaintiff can introduce evidence that his employer expressed opposition to his speech, either to him or to others.  Third, the plaintiff can introduce evidence that his employer's proffered explanations for the adverse employment action were false and pre-textual.

Coszalter v. City of Salem, 320 F.3d 968, 976 (internal citations and quotations omitted, alteration in original) (citing Keyser v. Sacramento City Unified School District, 265 F.3d 741 (9th Cir.

24

1   2001) (as amended)).  Accord Alpha Energy Savers, Inc. v. Hansen,

2   381 F.3d 917, 929 (9th Cir. 2004).  Plaintiff has not argued that

3   he can satisfy the third element of his claim by any of these

4   methods.  It appears that Plaintiff would not be able to support

5   this element of his claim.  It is undisputed that as a result of

6   the 1987 incident, Plaintiff was disciplined and then fully

7   exonerated on appeal.

8        In his affidavit, Plaintiff claims, in a conclusory manner,

9   that after the incident in 1987, he was "subjected to years of

10  harassment and persecution," which "involved passing [him] over

11  repeatedly for promotions when [he] was the most qualified."

12  (Penska Aff. ¶¶14-15 (#41).)  He particularizes his allegation

13  somewhat, claiming that he was the best qualified candidate for

14  promotion to lieutenant in 1995 (¶16), a date eight years after

15  the HIV/AIDS list incident.  He claims that "[o]ne of the

16  superiors responsible for passing over me was [Defendant] Walker

17  who had a history of enmity directed at me following the HIV list

18  incident."  (Penska Aff. ¶16 (#41).)  There is no indication of

19  the basis for Penska's knowledge of Defendant Walker's alleged

20  enmity.  Plaintiff also does not indicate the basis for his

21  allegation that he was the best qualified candidate or introduce

22  any documentation of his failed promotion attempts.  "A

23  conclusory, self-serving affidavit, lacking detailed facts and any

24  supporting evidence, is insufficient to create a genuine issue of

25  material fact."  F.T.C. v. Publishing Clearing House, Inc., 104

26  F.3d 1168, 1171 (9th Cir. 1997).  Plaintiff alleges that he was

27  constructively discharged in October 2002, approximately fifteen

28  years after his protected speech.  There is no evidence, other

than Plaintiff's conjecture, that Defendants alleged adverse

employment actions were connected to the HIV/AIDS list incident,

let alone that Plaintiff's speech in connection with the list was

a substantial or motivating factor for any adverse employment

actions.  Summary judgment will therefore be granted for

Defendants on this claim.[5]


## VII. DUE PROCESS

In order to sustain his § 1983 due process claim, Penska must

show that (1) Defendants deprived him of a property interest and

(2) that they did so without due process of law.  Huskey v. City

of San Jose, 204 F.3d 893, 900 (9th Cir. 2000). It is undisputed

that Penska had a property interest in his state employment.

(Defs.' Mot. 15 (#36).)  In opposing Defendants' motion for

summary judgment, Plaintiff has not argued that Defendants'

deprived him of any other interests protected by the Due Process

Clause.  Penska resigned from his position on October 10, 2002.

(Resignation Form, Defs.' Ex. N, Defs.' Mot. (#36); Penska Aff.

¶4, Pl.'s Opp. (#41).)  He nevertheless argues that he was

deprived of his property interest in his job because his

resignation was allegedly the result of a constructive discharge.

To survive summary judgment, Penska must demonstrate that

there are triable issues of fact as to whether a reasonable person

---

[5]Plaintiff's failure to show that a genuine issue of material
fact remains on the third element of his First Amendment
retaliation claim is a sufficient basis for the grant of summary
judgment for Defendants on this claim.  Therefore, the Court need
not reach the Pickering balancing test or Defendants' assertion of
qualified immunity.

1  in his position would have felt that he was forced to resign

2  because of intolerable and discriminatory working conditions.  Id.

3  Penska claims that he "was forced to retire because he no longer

4  felt safe working under Walker, Gabriel, O'Hallaran, Grigas, or

5  Sims." (Pl.'s Opp. 8 (#41).)  In support of this assertion, he

6  alleges that certain defendants solicited staff to file false

7  charges against him, that Defendant "Gabriel used the EEO system

8  of investigating claims of discrimination to investigate and

9  prosecute the Plaintiff for minor non [sic] qualifying employee

10 complaints," that Defendant Walker circumvented the chain of

11 command to discipline Plaintiff, and that when Plaintiff made

12 complaints, the grievance process was not followed and his claims

13 were not addressed.  (Pl.'s Opp. 8 (#41).)

14      With regard to the alleged false charges, taking the evidence

15 in the light most favorable to Plaintiff, it appears that on more

16 than one occasion, Defendants Walker, Gabriel, and/or Reilly

17 solicited staff to file false charges against Plaintiff.  (Reilly

18 Aff. ¶¶3-4, Pl.'s Opp. (#44); Hixson Aff. ¶2, Pl.'s Opp. (#44).)

19 It does not appear, however, that there is admissible evidence to

20 support Plaintiff's assertion that Defendant Gabriel used the

21 discrimination claims system to investigate and prosecute

22 Plaintiff for non-qualifying offenses.  Plaintiff has given no

23 specific examples of such conduct.  He relies on the affidavit of

24 Louis Hixson, which only contains inadmissible hearsay in support

25 of this allegation.[6]  Plaintiff also relies on a document that

26

27      [6]The relevant portions of Hixson's affidavit relates a

28 statement that Defendant Gabriel allegedly made to an unidentified
   officer and that was allegedly relayed from that unidentified

1  appears to have been prepared by him in connection with his Nevada

2  Equal Rights Commission case (Defs.' Ex. D).  In this document,

3  Plaintiff alleges that statements were made by third parties

4  indicating that Defendant Grigas was targeting Plaintiff; no

5  admissible evidence is offered to support this allegation.

6      Plaintiff's allegation that Defendant Walker circumvented the

7  chain of command is not based on specific factual allegations.  In

8  support of this assertion, Plaintiff relies on the affidavit of

9  Nancy Reilly, wherein she asserts that "Walker on numerous

10 occasions skipped the chain of command bypassing my authority to

11 supervise Penksa [*sic*], and disciplined Penksa [*sic*] in violation

12 of Department Policy."  (Reilly Aff. ¶5 (#44).)  No further

13 elaboration is given.  There is no specific allegation as to when

14 and how Defendant Walker skipped the chain of command or

15 disciplined Plaintiff.

16     Plaintiff also complains that when he made grievances, the

17 grievance process was not followed and his claims were ignored.

18 He relies on his own testimony, wherein he asserted, "In my

19 opinion, none of the grievances were handled properly." (Penska

20 Depo. 18:21-23, Defs.' Ex. A (#36).)  During his deposition,

21 however, he went on to admit that he had dropped the referenced

22 grievances.  (Penska Depo. 19:25-20:6, Defs.' Ex. A (#36).)  His

23 testimony that he dropped his grievances, however, does not negate

24 his testimony that he felt his grievances were not handled

25 properly and that Defendants were nonresponsive to his complaints.

26

27 officer to Hixson.  (Hixson's Aff. ¶3.)  The unidentified officer's

28 statement to Hixson is hearsay, Fed. R. Ev. 801, not falling within
   any recognized exception.

28

1    It appears that there is a genuine issue of material fact as
2   to whether Defendants Walker, Grigas, and Gabriel solicited staff
3   to file complaints against Plaintiff.  Taking the evidence in the
4   light most favorable to Plaintiff and making all reasonable
5   inferences in his favor, a reasonable jury may be able to find
6   that a reasonable person in Plaintiff's shoes would have felt that
7   Defendants Walker, Grigas, and Gabriel were attempting to oust him
8   and would have felt forced to resign.

9    Accordingly, summary judgment will not be granted for
10  Defendants Walker, Grigas, and Gabriel in their individual
11  capacities.  As was previously discussed, the Eleventh Amendment
12  bars suit under § 1983 against Defendants in their official
13  capacities and the State of Nevada; summary judgment will,
14  therefore, be granted for these defendants.  Summary judgment will
15  also be granted for Defendants Crawford and O'Halloran in their
16  individual capacities because there is no allegation that their
17  actions contributed to the alleged constructive discharge and
18  resulting due process violation.

19

20                  **VIII. INFLICTION OF EMOTIONAL DISTRESS**

21    Defendants seek summary judgment on Plaintiff's fifth cause
22  of action for infliction of emotional distress.  In his
23  opposition, Plaintiff relies solely on Officer Grigas' alleged
24  reference to Plaintiff as "Pollack."  (Pl.'s Opp. 10 (#41).)  In
25  support of this allegation, he relies on his deposition testimony,
26  wherein he states that Defendant Grigas would comment on work by
27  saying, "Not bad for a Pollack," and Defendant Grigas called him
28  "Dumb Pollack" (Penska Depo. 58:1-20).  He does not argue that any

1  statements or conduct by other defendants constituted actionable

2  extreme and outrageous behavior or that other defendants are

3  liable for Defendant Grigas' conduct.  It therefore appears

4  undisputed that summary judgment should be granted for the

5  defendants other than Defendant Grigas.

6      With regard to Defendant Grigas' conduct, it does not appear

7  that Plaintiff has met his burden to show that a genuine issue of

8  material fact remains.  To prevail on a claim of intentional

9  infliction of emotional distress, a plaintiff must establish: "(1)

10  extreme and outrageous conduct with either the intention of, or

11  reckless disregard for, causing emotional distress, (2) the

12  plaintiff's having suffered severe or extreme emotional distress

13  and (3) actual or proximate causation." Olivero v. Lowe, 995 P.2d

14  1023, 1025 (Nev. 2000) (quoting Barmettler v. Reno Air, Inc., 956

15  P.2d 1382 (Nev. 1998).  It is unnecessary to decide whether the

16  use of the alleged slur rises to the level of extreme and

17  outrageous conduct because there is no evidence of causation.

18  Defendants have presented evidence that Plaintiff never complained

19  of the alleged comments by Defendant Grigas and never asked

20  Defendant Grigas to discontinue such comments.  (Penska Depo.

21  58:24-59:2, 60:9-12, 61:7-11.)  Taking the evidence in the light

22  most favorable to Plaintiff, it appears that Defendant Grigas made

23  the alleged comments, but there is no indication that Plaintiff

24  found the comments offensive, let alone evidence that the comments

25  were the cause of severe or extreme emotional distress.

26      Summary judgment will, therefore, be granted for Defendants

27  on Plaintiff's fifth claim of infliction of emotional distress.

28

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#36) is **GRANTED** in part and **DENIED** in part as follows:

- Summary judgment is *granted* for all Defendants on Plaintiff's second, third, fourth, and fifth claims for relief;

- Summary judgment is *granted* for Defendants State of Nevada, Crawford, and O'Halloran on Plaintiff's first claim for relief;

- Summary judgment on Plaintiff's first claim for relief is *granted* for Defendants Equal Employment Officer Gabriel, Warden Grigas, and Associate Warden of Operations Walker insofar as they are named in their official capacities;

- Summary judgment is *denied* on Plaintiff's first claim for relief as regards Defendants Gabriel, Grigas, and Walker in their individual capacities.

DATED: August ___29___, 2007.

_Edward C. Reed._
UNITED STATES DISTRICT JUDGE

31